UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                               Case No. 11-20537

vs.                                           HON. MARK A. GOLDSMITH

DWIGHT JERICE BREWER,

        Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE**
**RELEASE (Dkt. 309)**

Defendant Dwight Jerice Brewer pleaded guilty to conspiring to distribute—and possessing with intent to distribute—heroin. Plea Agreement (Dkt. 128). On September 12, 2013, Judge John Corbett O'Meara sentenced Brewer to a term of imprisonment of 188 months. Judgment (Dkt. 169).[1] On January 5, 2016, Judge O'Meara reduced Brewer's term of imprisonment to 151 months, pursuant to 18 U.S.C. § 3582(c)(2). 1/5/16 Order (Dkt. 291). Brewer's projected release date is September 23, 2024. Inmate Data at PageID.1223 (Dkt. 315-1).

This matter is now before the Court on Brewer's motion for compassionate release (Dkt. 309). Having considered all briefing and record materials submitted by the parties, the Court denies Brewer's motion.[2]

---

[1] This case was reassigned to the undersigned on January 7, 2022.

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to Brewer's pro se motion, the briefing includes Brewer's supplemental brief, which he filed through appointed counsel (Dkt. 314); the Government's response (Dkt. 316); Brewer's reply, which he also filed through counsel (Dkt. 317); and Brewer's supplemental document (Dkt. 320).

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).³ Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

---

³ Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden. 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Here, the Government concedes that Brewer has met the exhaustion requirement. See Resp. at 4.

The Court considers (i) whether extraordinary and compelling circumstances warrant reducing Brewer's sentence, and (ii) whether the § 3553(a) factors support a sentence reduction.

### A. Extraordinary and Compelling Circumstances

Brewer initially sought compassionate release so that he could care for his mother and father. Mot. at PageID.1192. Brewer represented that both of his parents were ill and that his mother was taking care of his father. Id. Because Brewer's father has now passed away, Brewer's reason for release is confined to his desire to care for his mother. Def. Supp. Br. at 10. According to Brewer, his mother has "heart failure, high blood pressure, bronchitis[,] and is also diabetic." Mot. at PageID.1192. In a letter to the Court, Brewer's mother adds that "in the past three months, [she has] . . . fallen over the basement steps," she "need[s] a shoulder surgery" but has "no one to help [her] . . . afterwards," she has a "problem with [her] . . . eyes," and she has "possible breast cancer." Mother Letter (Dkt. 320-1). Brewer's and his mother's descriptions of Brewer's mother's health conditions differ from the description provided by his mother's health records. According to these records, Brewer's mother has type 2 diabetes mellitus, iron deficiency, restless legs, vertigo, obesity, pain of the right knee joint, and lumbago with sciatica. Smith Health Records at PageID.1248. As of October 12, 2021, Brewer's mother's blood pressure was 137/73 mm Hg, id. at PageID.1250, which means that she has prehypertension.[4] Brewer asserts that he is the "sole [potential] caretaker" for his mother, Mot. at PageID.1192, and that his mother "reports . . . that

---

[4] See Centers for Disease Control and Prevention, "High Blood Pressure Symptoms and Causes," https://www.cdc.gov/bloodpressure/about.htm#:~:text=A%20normal%20blood%20pressure%20level%20is%20less%20than%20120%2F80%20mmHg.&text=No%20matter%20your%20age%2C%20you,pressure%20in%20a%20healthy%20range (last visited Mar. 14, 2022) (explaining that a "normal" blood pressure is <120/<80 mm Hg; "prehypertension" is 120–139/80–89 mm Hg; and "hypertension" is >140/>90 mm Hg).

her other children who could potentially be caregivers for her are either dealing with their own serious health concerns or do not live in the local area," Def. Supp. Br. at 10.

In general, having a sick or aging parent is not an extraordinary circumstance to release a prisoner. United States v. Daniels, No. 19-cr-00204, 2022 WL 164543, at *5 (M.D. Tenn. Jan. 18, 2022) ("[M]any, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.") (punctuation modified). To that end, courts commonly decline to grant compassionate release to a prisoner who has not shown that (i) his or her parent is "entirely" incapable of self-care, and (ii) no alternative caregivers are available. United States v. Gilbert, No. 16-20414, 2021 WL 5085846, at *3 (E.D. Mich. Nov. 2, 2021) (finding that a defendant failed to show that caregiving for his ailing father and grandmother was an extraordinary or compelling reason to release him because "the defendant's motion was not supported by any affidavits of any alternative caregivers such as the defendant's siblings explaining why they could not provide the additional assistance needed by either [the defendant's father or grandmother] . . . in their daily lives," and the defendant's grandmother "did not attest that she is entirely unable to care for herself").

Here, Brewer's mother apparently told defense counsel that none of her other children are available to help her, but, as in Gilbert, this contention is not supported by affidavits from any of Brewer's siblings. Nor does Brewer address the availability of other potential caregivers, such as aunts, uncles, etc. Further, Brewer's mother has not attested that she is "entirely unable to care for herself." Id. The fact that she recently acted as a caregiver for Brewer's now-deceased father suggests that she not only has capacity to care for herself, but also has the capacity to care for others. Brewer's mother's health records confirm that she has medical conditions, but "[t]he fact that a defendant's parent merely has a health condition does not mean that the defendant should

4

be released to assist that parent." United States v. Farnsworth, No. 15-20095, 2021 WL 5564773, at *1 (E.D. Mich. Nov. 29, 2021). "Not every health condition of a defendant's parent creates an 'extraordinary' need for the defendant to be released to care for the parent, because not every condition requires around-the-clock assistance to perform daily activities." Id. (punctuation modified). Brewer's mother's health records do not reveal any health conditions that typically require around-the-clock assistance to perform daily activities.

The Court sympathizes with Brewer's mother who, although not incapacitated, expresses that she would benefit from Brewer's assistance were he not incarcerated. But, unfortunately, any hardship on Brewer's mother resulting from his incarceration is "the inevitable consequence of [Brewer's] serious criminal conduct that landed him in incarceration." Daniels, 2022 WL 164543, at *5.

Even if Brewer had shown an extraordinary and compelling reason to reduce his sentence, a sentence reduction would still be unwarranted based on the § 3553(a) factors, as explained below.

**B. Section 3553(a) Factors**

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Brewer's crimes were serious. As the Government describes:

> Brewer was not just a run of the of mill drug dealer, his conduct was serious and very dangerous. Brewer played a significant role in a large scale, international narcotics trafficking organization, which operated in and around the City of Detroit. The organization, which involved the Mexican cartel, was responsible for distributing large amounts of heroin and cocaine throughout southeastern Michigan through drug sales to customers.

5

Resp. at 12. Brewer's drug crimes specifically involved the distribution of heroin. Heroin is a Schedule I controlled substance, meaning that it has no accepted medical use and a high potential for abuse. The circulation of such addictive "drugs presents a grave danger to the community's health and wellbeing." United States v. Levya, No. 16-20723, 2022 WL 340588, at *4 (E.D. Mich. Feb. 4, 2022) (finding that the § 3553(a) factors weighed against granting compassionate release to a defendant who was convicted of conspiracy and attempt to possess with intent to distribute heroin). Further, Brewer possessed a gun during the drug trafficking conspiracy, Plea Agreement at 2, meaning that he was prepared to use violence to perpetrate the conspiracy.

The Court next turns to the question of whether Brewer's release would endanger the public. Brewer argues that his age (47 years old) lowers his risk of recidivism. Def. Supp. Br. 14–15. To support his argument, Brewer points to United States v. Payton, 754 F.3d 375, 378–379 (6th Cir. 2014). Id. at 15. There, the Sixth Circuit explained that studies show that "past fifty years old there is a significantly lower rate of recidivism," and, therefore, "a defendant's age, and specifically old age, is a relevant consideration" in the § 3553(a) analysis. Payton, 754 F.3d at 379. However, Brewer is not even 50 years old. Thus, Brewer's age does not prove that he is unlikely to commit further crimes if released.

Next, Brewer contends that the support of his family (i.e., his mother, with whom he would live if released, and his two daughters) lowers his risk of recidivism. Def. Supp. Br. at 15. The Court is not persuaded that Brewer's mother's and daughters' support would ensure that Brewer would not commit further crimes if released, given that Brewer's relationship with these family members apparently failed to deter him from committing the underlying criminal conduct. To the extent that Brewer suggests that his need to care for his mother would occupy his time (and, hence, keep him from committing further crimes), for the reasons explained above, Brewer has not shown

6

that his mother requires his assistance around-the-clock. As a result, Brewer has not established that caring for his mother would prevent him from endangering the public.

Brewer also argues that his post-offense rehabilitation efforts lower his risk of recidivism. Def. Supp. Br. 13. These efforts include working as an orderly at FCI Edgefield Camp, volunteering at the main FCI facility, and gaining education credits. Def. Supp. Br. at 14; Reentry Plan at PageID.1234–1235 (Dkt. 315-4); Inmate Education Data (Dkt. 315-5). The Court commends Brewer on his rehabilitation efforts. However, he has a long way to go before he no longer poses a serious danger to the public. The seriousness of the offense for which Brewer was sentenced in this case demonstrates that he would be a danger to the community if released. See United States v. Foster, No. 15-CR-20493, 2021 WL 1526276, at *2 (E.D. Mich. Apr. 19, 2021) (finding that the seriousness of the offense for which defendant was convicted—conspiracy to possess with the intent to distribute heroin—showed that the defendant would be a danger if released, even though the offense was not violent) (citing United States v. Stone, 608 F.3d 939, 947 n.6 (6th Cir. 2010)) (other citation omitted). Further, since being incarcerated for the instant offense, Brewer has had three disciplinary incidents involving "refusing work/PGM assignment." Reentry Plan at PageID.1235–1236; Inmate Discipline Data at PageID.1243 (Dkt. 315-6).[5]

The Court notes that Brewer suggests that he could serve the remainder of his term of imprisonment on home confinement. See Def. Supp. Br. at 16. But home confinement would not

---

[5] While incarcerated for a prior federal offense, Brewer had multiple disciplinary incidents, including possessing a hazardous tool, being in an unauthorized area, contacting the public without authority, and refusing to obey an order. Reentry Plan at PageID.1235–1236. Brewer suggests that the Court should not consider these incidents because they happened while he was incarcerated for his prior offense. Def. Supp. Br. at 15. It is a positive sign that Brewer has not committed an assaultive offense while incarcerated in recent years. But at the same time, Brewer's long history of disciplinary incidents is troubling. It suggests that he is not easily deterred from committing offenses and would likely not abide by all of the conditions of home confinement.

assure that Brewer would not pose a danger to the community. In the underlying offense, individuals delivered drugs to Brewer, which he then sold to his own customers. Plea Agreement at 2. Brewer could engage in this kind of criminal conduct from his place of home confinement. The availability of home confinement, therefore, does not cause the § 3553(a) factors to weigh in Brewer's favor. See United States v. Miezin, 456 F. Supp. 3d 911, 916 (N.D. Ohio Apr. 27, 2020) (denying compassionate release to defendant whose "requested relief herein—home confinement—would not lessen his danger to the community" because the defendant "could engage in his prior criminal conduct at any time from his place of home confinement").

Finally, Brewer argues that the length of time that he has already served is just punishment and sufficient to promote respect for the law. Def. Supp. Br. at 15–16. Specifically, Brewer states that he has served 75% of his term of imprisonment. Id. at 15. The fact that a prisoner has completed 75% of his sentence may weigh in his favor but is not dispositive. See, e.g., United States v. Brown, 2021 WL 1706767, at *5 (E.D. Va. Apr. 29, 2021) (denying compassionate release to a prisoner who had served over 75% of his sentence and had not committed any disciplinary infractions in the last 12 years due to "the nature and circumstances of [the defendant's] offense" and "his previous criminal history of violence and firearm-related offenses"). Here, the fact that Brewer has completed 75% of his sentence is outweighed by the seriousness of his offense and the danger that he would commit further crimes if released now. Releasing Brewer at this time would neither promote respect for the law nor protect the public's safety.

The § 3553(a) factors, therefore, weigh against granting Brewer's motion.

## II. CONCLUSION

For the reasons stated above, Brewer's motion for compassionate release (Dkt. 309) is denied.

SO ORDERED.

Dated: April 15, 2022  
       Detroit, Michigan
      s/Mark A. Goldsmith  
      MARK A. GOLDSMITH  
      United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 15, 2022.

      s/Karri Sandusky  
      KARRI SANDUSKY  
      Case Manager